## The People vs. John Reagle.

60b    527
172 NY⁸227

The office of a writ of *certiorari*, in a criminal case, issued under the provisions of the Revised Statutes, after trial and before judgment, is only to bring up the indictment, the proceedings on the trial, and any bill of exceptions that may have been taken; and it presents for review only the questions arising on the indictment and bill of exceptions.

In criminal cases, exceptions can be taken only on the trial, and to the rulings of the court as to the admission or rejection of evidence, or upon other questions presented on a trial before a jury, and not in any case to the judgment or order of the court upon a demurrer.

The remedy for an erroneous decision upon a demurrer is, in civil cases, by appeal; and in criminal cases, by writ of error.

The presiding justice at the oyer and terminer has no authority to discharge a jury, in the absence of his associates, whose presence is necessary to constitute a court of oyer and terminer.

The only thing which the presiding judge is authorized to do, in the absence of his associates, touching the business of the oyer and terminer, seems to be to take recognizances and bail. *Per* Talcott, J.

Where the jury, in a criminal case, after the cause was tried and submitted to them, separated without authority, and without having agreed upon any verdict; *Held* that this constituted no bar to another trial upon the same indictment.

The effect of modern decisions is, that irregularities whereby a lawful verdict is prevented, produce a mistrial, which is no bar to a new trial.

It is conceded, at this day, that the court may discharge a jury, in case of necessity, in a criminal case, without furnishing a bar to a new trial. That the court, in the exercise of its discretion, is to judge of the necessity and propriety of the discharge, provided there be any facts on which such discretion may be exercised. *Per* Talcott, J.

Where the jury, after the cause was committed to them, and before they had rendered or agreed upon a verdict, had separated without having been legally discharged; *Held* that, as any verdict in the case, to be afterwards rendered by that jury, would doubtless have been invalid, and set aside, there was a necessity for the exercise of the power of the court, in its discretion, and in furtherance of justice, to discharge the jury. And that, such power having been exercised by a competent court, the discharge constituted no bar to a new trial of the prisoner.

By the common law, husband and wife cannot be witnesses for each other. The provisions of the Code of Procedure do not apply to proceedings under the criminal law. And the act of 1869, (ch. 678,) allowing persons charged with crime to be witnesses in their own behalf, relates only to the party charged with crime. Hence, upon the trial of an indictment, the prisoner's wife is an incompetent witness for him.

CERTIORARI to the Erie oyer and terminer. The prisoner was tried and convicted in that court in June 1871, upon an indictment charging him with the offense of arson in the first degree. When the district attorney moved the trial of the indictment, upon the issue previously joined, on the defendant's plea of not guilty, the prisoner interposed a special plea in bar of further trial upon the said indictment, in which he insisted that no further proceedings ought to be had or taken against him on said indictment, because he alleged that on the 19th of December, 1870, at the city of Buffalo, at a court of oyer and terminer duly and legally constituted, the defendant was put upon his trial on the said indictment, and a jury was in due form of law drawn, empanneled and sworn to try the said issue. And the defendant averred that the aforesaid indictment was the same and no other, and the felony therein charged was the identical felony, which the district attorney moved to prosecute; and that the said John Reagle was the same and no other. That the jury was drawn, empanneled, charged and sworn to try the issue in said indictment, which charged the same identical felony, and was in truth and fact the same identical indictment which the district attorney, in the name of the people, now prosecuted against the said John Reagle, and no other or different indictment.

And the defendant alleged that testimony on the part of the people, and on the part of the prisoner, was in due form of law given on said trial, and the court in due form delivered its charge to the jury, and the jury thereupon, in the custody of a sworn officer, retired to deliberate upon their verdict. That thereafter, and after the jury had been deliberating several hours, the said presiding justice being upon the bench, caused the jury to be brought before him, and in the absence of the justices of the sessions, the clerk of the court, and of the prisoner and his counsel, who had no knowledge thereof, the said

The People *v.* Reagle.

prisoner then being in jail, ascertained upon inquiry of the jury that they had not agreed, and that there was no probability of their agreeing; and the said judge thereupon discharged the jury from further deliberation in the case, and they did thereupon separate. That on the following morning the said court of oyer and terminer duly assembled, as likewise did the jurors in attendance upon that term of the court, in this case. And that thereupon the clerk of said court entered in the minutes of said court, kept by him in said case in the usual form, the statement that the said jury not being able to agree on their verdict, were discharged by the court, (which minutes were thereafter and at the succeeding term of the court of oyer and terminer ordered to be corrected by adding thereto the statement that the said jury was so discharged by the presiding judge in the absence of the two justices of the sessions.) That the names of said jurors were returned to the jury box for the court, and said court continued in session; other causes were tried, and the said court adjourned *sine die* on the 23d day of December, 1870. That no other or further proceedings were had in this case. And the defendant averred that he had once been put in jeopardy, in manner and form aforesaid, upon said indictment, and ought not to be tried again thereon.

To this plea a demurrer was interposed by the district attorney, in behalf of the people. The said court of oyer and terminer, after deliberation, sustained the said demurrer, and held it sufficient in law, and then and there overruled the plea aforesaid, to which the prisoner's counsel excepted.

The prisoner was then put upon his trial on the said indictment, and the jury, after hearing the evidence, found him guilty. Whereupon the prisoner, by his counsel, moved in arrest of judgment and for the discharge of the accused, upon the grounds stated in the prisoner's plea aforesaid, and the admitted facts in support thereof, alleg-

ing that no valid judgment could be pronounced upon the verdict of the jury. The court denied the motion in arrest of judgment, and the counsel excepted.

Judgment was stayed until the decision of the Supreme Court should be made, upon the exceptions.

*Box & Perkins*, for the defendant.

I. 1. "Courts of oyer and terminer of the respective counties, except in the city and county of New York, shall be composed of a justice of the Supreme Court, who shall preside, and the county judge and the justices of the peace, designated as members of the court of sessions; and the presiding justice and any two of the other officers above mentioned shall have power to hold said courts; and said courts shall be held at the same times and places that circuit courts of the same county shall be appointed, to be held." (3 *R. S. p.* 295, § 9, *5th ed.*) No other persons than the officers above mentioned, nor either one of these officers, in the absence of the other two, can be said to constitute a court of oyer and terminer, or in any instance exercise the functions of that court. 2. After the jury retired in charge of the officer, the court received no communication from them as to whether they had agreed upon a verdict, or disagreed, or as to any special cause why they should be discharged. The court never called the jury before it, in the case, and could, therefore, exercise no discretion in the matter; there were never any facts before the court, upon which it could act. The jury were discharged at the conclusion of the other business before the court, before they had rendered a verdict in the case, and without any cause which would authorize the court in its discretion so to discharge the jury. This was an arbitrary discharge before a verdict had been rendered, and the prisoner should not be subject to another trial. 3. This was not what has been termed a mistrial, like the cases referred to in *Shepherd* v. *The People*, (25 *N. Y.* 406,)

The People *v.* Reagle.

or like the case of *Cancemi* v. *The People*, (18 *id.* 128,) and similar cases where there has been a defect in the organization of the court, or in empanneling the jury; in these cases there never had been any trial at all by a tribunal competent to render a judgment; neither was there any misconduct on the part of the jury. It was an erroneous assumption of authority on the part of the presiding judge; but after he had assumed it, the responsibility was with him and not with the jury. From his relation to them as a member of the court, they look to him for advice and instructions, and it is not only their right, but their duty to act upon his advice, and receive his instructions in all questions of law, and as to the manner of proceeding in cases, under the charge of the court. 4. Here is a duly organized court, a jury properly empanneled, a legal trial, and the court discharged the jury before they had rendered a verdict, and without any cause shown to the court why a verdict should not be rendered. Can the prisoner be again put upon trial upon the same indictment, and for the same offense? 5. There is some very respectable authority against the practice of putting a prisoner, indicted for felony, upon his second trial, where the jury had been discharged by the court, on the first trial, without rendering a verdict. Among the cases most ably presented and thoroughly considered upon this point are *Conway* v. *The Queen*, (7 *Irish L. R.* 149;) in the State of Alabama, the case of *Weed* v. *The State*, (7 *Porter*, 187;) in the State of Virginia, the case of *Williams* v. *The Commonwealth*, (2 *Grattan*, 567,) where the matter was well considered, in 1845, decided that such a discharge of the jury was an acquittal of the prisoner. 6. Although this rule has been somewhat modified by later cases, especially in this State, still the discharging of juries in criminal cases, especially in cases of felony, before they have rendered their verdict, is a very "delicate and highly important trust," and the authority can only be exercised by the court in its legal dis-

cretion " in cases of absolute and extreme necessity," and should always be exercised with the greatest care. The rule laid down by Kent, J., in delivering the opinion of the court in the case of *The People* v. *Olcott*, (2 *John. Cas.* 307,) has been frequently quoted and approved in subsequent cases, and seems to be the law upon this subject at the present time, in this State. The learned justice said : " Every question of the kind must rest with the court, under all the particular or peculiar circumstances of the case. There is no alternative ; either the court must determine when it is requisite to discharge, or the rule must be inflexible, that after the jury are once sworn and charged, no other jury can, in any event, be sworn and charged in the same case. The moment cases of necessity are admitted to form exceptions, that moment a door is opened to the discretion of the court to judge of that necessity, and to determine what combination of circumstances will create it." In the case of *The People* v. *Goodwin*, (18 *John.* 200,) Chief Justice Spencer, in delivering the opinion of the court, (page 203,) quotes with approval, the dictum of Justice Kent in the case above cited. In the later case of *The People* v. *Green*, (13 *Wend.* 57,) Chief Justice Savage, in delivering the opinion of the court, also quotes, with approval, the dictum of Justice Kent above cited, and holds it to be the law. In the later case of *Grant* v. *The People*, (4 *Parker*, 527,) Rosekrans, J., delivering the opinion of the court, cites with approval, the rule laid down in the above cases, and further says, (page 633 :) " When a jury are unwarrantably discharged it is equivalent to acquittal. The case, to warrant the discharge of a jury, must be one of uncontrollable emergency." This question is discussed at considerable length in *Bennett & Heard's Leading Criminal Cases*, (*vol.* 2, *p.* 366,) with very full references to decided cases upon the subject, in a note, at the conclusion of the opinion, in the case of the *U. S.* v. *Perez.* 7. In some of the other States, where the

old rule first above referred to has been modified, they seem to have adopted the same rule as the courts in our own State, and the language of Justice Kent above cited is approved. In the case of *Poage* v. *The State*, (*Ohio State R.* 3 *Warden & Smith*,) the indictment charged forgery of a promissory note. After the case had been submitted to the jury, and they had retired to deliberate, a note was sent by one of the juryman to the judge, stating that they were unable to agree, and that one of them was not a naturalized citizen, and asking if they could be discharged. The jury were called into court and discharged, without it appearing, from the records of the court, that any communication had been received from the jury that they had disagreed, or were unable to agree, of which the court could take judicial notice; or that any one of them was unqualified. Chief Justice Thurman, in delivering the opinion of the court, said: "If we find that no case arose for the exercise of discretion, it will be unnecessary to inquire whether we have any power to review a legal discretion." Further on he says: "Now it does seem to us that this was no case for the exercise of that 'delicate and highly important trust' that only exists 'in cases of absolute and extreme necessity;' and were we to sanction what has here been done, it would allow to a judge an absolute and uncontrollable, instead of a legal discretion." Ranney, J., in delivering the opinion of the court, said: "As a discharge without a sufficient reason is an acquittal, it must appear from the record, to justify holding him to a further trial, that an obstacle, which the law will recognize as a necessity, did, in fact, exist; that it engaged the attention of the judge; that his order was based thereon, and was the result of consideration and decision." (*Dobbins* v. *The State*, 14 *Ohio R.*, *Critchfield*. *Miller* v. *The State*, 8 *Indiana*, 325. *Wright* v. *The State*, 5 *id.* 290.)

8. All the authorities agree in holding that the cause for discharging a jury after they have retired to deliberate,

and before they had rendered their verdict, in such a manner as to hold the prisoner to another trial, must not only be one of those cases which the law regards as an absolute necessity, but such cause must be passed upon by the court; it must be presented to the court in such a manner that the court may exercise its discretion upon it; such cause must engage the attention of the court, and the decision of the court must be based upon such cause, after deliberation. There was never any cause for discharging the jury presented to, considered by, or in any way passed upon by the court of oyer and terminer in this case. The jury were not discharged by its judgment or order for any cause recognized by the law as creating any necessity.

9. It is a rule so well settled that I do not deem it necessary to cite numerous authorities to sustain it, that when after a jury have been regularly and duly sworn on the trial of an indictment for felony, and evidence has been offered, if, for any cause, surprise, mistake or error, the district attorney finds himself unable to proceed with the trial, and he withdraws a juror with leave of the court and stops the trial, it is equivalent to acquittal, and the prisoner cannot be tried again. So, where the district attorney was prepared with competent evidence which was by error of the court excluded, and the district attorney could not proceed with the prosecution until other evidence was supplied, and was obliged to withdraw a juror and stop the trial, in consequence of the erroneous ruling of the court, held this amounted to an acquittal, and the prisoner could not again be put upon trial. (*Klock* v. *The People*, 2 *Parker*, 676.) I can see no distinction in principle between these cases and the one at this bar; in those cases the error, mistake or surprise, of the district attorney, or the court, as in the last case cited, prevents the prisoner from receiving the verdict of the jury that has been sworn in his case, and before whom the trial has been commenced;

The People *v.* Reagle.

in either case it is the fault of an officer of the people, without any fault or assent on the part of the prisoner.

In this case it was the mistake or error, entirely—the act—of an officer of the people and a member of the court, that deprived the prisoner of his right to have a verdict rendered in his case by the jury before whom he had been tried, or to have that jury come into court and there present their cause for not rendering a verdict, and have that cause passed upon by the court, without one mind being withdrawn from that deliberation. These were rights guaranteed to the prisoner and secured to him by law. When he was denied these by error, mistake or any unlawful act or proceeding, must his liberty again be put in jeopardy by the hazard of another trial? How long can such experiments be continued before he shall be entitled to an acquittal? 10. If what has been done in this case shall be sanctioned, and it shall be held that the prisoner could be again put upon trial, would it not be to deny him the protection the constitution and common law would give against being placed twice in jeopardy for the same offense? Would it not also be giving to the people a new trial, where in the first they failed to convict the prisoner, simply upon their showing irregularity or error upon the part of some of the officers of the court or of the court itself? This is strictly prohibited by law, in case the jury render a verdict of acquittal, however irregular or erroneous may have been the proceeding upon the trial which led to that result, or however much such error or irregularity may have contributed to that result. Ought there to be any more favor shown the people, or have they any greater rights when their officers of the court who had this trial in charge, or the court itself, have by a similar error or irregularity, and without any fault on the part of the prisoner, prevented the jury from rendering such a verdict?

II. The question put by the district attorney to the wit-

ness Barbara Bowers, "What did you hear Beckerich say in the bedroom, if anything?" was incompetent, and ought to have been excluded. Beckerich, who was the complaining witness, and the bitterest foe of the prisoner, could not manufacture evidence against the prisoner by making declarations as to his identity in the hearing of other parties and in the absence of the prisoner. No evidence of such declarations can be admitted. Only in trials for murder or manslaughter can the declarations of the injured person be given in evidence. Even in that case the circumstances under which the declarations were made should be fully disclosed to the court, that it may be determined whether the declarations were made under the expectation of certain and immediate death; as only in that case would such evidence be competent. (1 *Arch. Crim. Prac.* 449.)

III. It was error in the court to deny the prisoner the right to have Catharine Reagle, the wife of the prisoner, sworn and examined as a witness on the trial. By chapter 887, vol. 2 of the laws 1867, it is enacted that the husband or wife of any party to an action or proceeding in any court, or before any person having, by law or consent of parties, authority to examine witnesses, shall be competent and compelable to give evidence the same as any other witness on behalf of any party to such suit, action or proceeding. The second section of this chapter excepts from its operation criminal trials. By chapter 678, vol. 2, laws of 1869, it is enacted as follows: "Sec. 1. In the trial of all indictments, complaints and other proceedings against persons charged with the commission of crimes or offenses, and in all proceedings in the nature of criminal proceedings in any and all courts, and before any and all officers and persons acting judicially, the person so charged, shall, at his own request, but not otherwise, be deemed a competent witness; but the neglect or refusal of any such person to testify shall not create a pre-

sumption against him." Prior to 1869, section 398 of the Code of Procedure was as follows: "No person offered as a witness shall be excluded by reason of his interest in the event of the action." In 1869 this section (398) of the Code was amended so as to read as follows: "No person offered as a witness in any action or proceeding in any court, or before any officer acting judicially, shall be excluded by reason of his interest in the event of the action or proceeding, or because he is a party thereto, except as is provided in the next following section of this act. Nothing contained in the 8th section of this act shall be held or construed to affect or limit the operation of this or the next following section." The next section (399) here referred to, is in regard to the exclusion of evidence of conversations or personal transactions with deceased persons, lunatics, &c., in actions against administrators, committees, &c. Section 8, referred to in said 398th section, as amended, is as follows: " This act shall be divided into two parts. The first relates to courts of justice and their jurisdiction. The second relates to civil actions commenced in the courts of this State," &c. It thus seems clear that section 398, as amended, is not restricted in its operations to civil cases, but has equal application to criminal trials, and we submit it renders the husband and wife equally as competent to testify for or against each other in criminal trials as they as they are in civil trials.

*Lyman K. Bass*, (district attorney,) for the people.

I. Section 6, of article 1, of the constitution, providing that " no person shall be subject to be twice put in jeopardy for the same offense," is but a statement of the common law doctrine, and the prisoner is not aided by it, unless he can sustain a plea of *autrefois acquit*, or *autrefois convict*. Such plea can only be sustained when there has been a *verdict*, with the single exception hereafter named. (*People* v. *Goodwin*, 18 *John.* 187. *U. S.* v. *Perez*, 9 *Wheat.*

**579.**   *Wharton's C. L.*, §§ 580, 582, *and cases cited.*)   Spencer, Ch. J., in the case first cited, says: "The test by which to decide whether a person has been once tried, is perfectly familiar to every lawyer; it can only be by a plea of *autrefois acquit* or a plea of *autrefois convict.*" * * "In a legal sense, therefore, a defendant is not once put in jeopardy until the verdict of the jury is rendered for or against him, and if for or against him, he can never be drawn in question again for the same offense." Washington, J., said, in *U. S.* v. *Haskell*, (4 *Wash. C. C: R.* 402 :) "We are clearly of the opinion that the *jeopardy* spoken of in this article, can be interpreted to mean nothing short of the acquittal or conviction of the prisoner, and the judgment of the court thereon." "This was the meaning affixed to the expression by the common law, notwithstanding some loose expressions to be found in some of the elementary treatises, or in the opinions of some judges, which would seem to intimate a different opinion." The discharge of a jury in cases of felony, without verdict, where they were unable to agree, is not a bar to a second trial. The propriety of the discharge rests entirely in the discretion of the court, and will not be reviewed. (*People* v. *Olcott,* 2 *John. Cas.* 301. *People* v. *Green,* 13 *Wend.* 55.) No form or particular ceremony is essential to the discharge of the jury. It appears by the plea, that the jury retired to deliberate on their verdict on the 19th day of December, in the custody of a sworn officer. That on the following morning the court duly assembled, as likewise did the jurors, and thereupon an order was entered in the minutes that the jury not being able to agree, were discharged, and that thereupon their names were returned to the jury box, other causes were tried, and the court adjourned *sine die* on the 23d day of December. It is submitted that the functions of that jury were lawfully suspended by the court. (*People* v. *Thompson,* 2 *Wheeler C. C.* 473.) The only exception to be found to the rule that the plea of once

in jeopardy must be sustained by proof of a recorded verdict, is in those cases where, by the laches of the public prosecutor, he has been unprepared with his proofs, and the court, instead of taking a verdict of acquittal, which must have resulted from the trial, has permitted the withdrawal of a juror under the objection of the prisoner. Such are the cases of *Grant* v. *The People*, (4 *Park. C. R.* 527,) and *Klock* v. *The People*, (2 *id.* 676, *and cases there cited.*) They have no application to this case. In no other class of cases in this State has the discharge or separation of a jury before verdict, been held ground for pleading once in jeopardy. (*Wharton C. L.*, §§ 587, 588.)

II. If it be claimed here, on the part of the prisoner, either, first, that there was in fact a formal discharge of the jury by a misorganized court; or, second, that there was an illegal escape of the jury, then, in neither case was it a bar to his trial. It was, in either case, a mistrial, which cannot be pleaded in bar of a new trial. "At common law, a new trial could be granted in case of felony, where there had been a mistrial relative to the organization of the court, the empanneling of the jury, or the conduct of the jury." (*Shepherd* v. *People*, 25 *N. Y.* 406. *Arundel's case*, 6 *Coke*, 14. *People* v. *McKay*, 18 *John.* 214. *Cancemi case*, 18 *N. Y.* 128. *Blend* v. *The People*, 41 *id.* 604. *State* v. *Hall*, 4 *Halsted*, 256. *McGuire* v. *People*, 2 *Park.* 148.) *Hawkins*, (*P. C., bk.* 2, *ch.* 36, § 15,) says: "But it seems clearly settled that whenever the record on which a man is convicted of manslaughter, and admitted to his clergy, on an indictment or appeal of murder, is erroneous, either in respect of insufficiency in the indictment, or for a mistrial, &c., so that his life was not in danger at the trial, he cannot plead such conviction, and clergy thereon, in bar of a second indictment or appeal." The circumstance that the prisoner, in some of the cases cited, moved for a new trial, is of no consequence. If the mistrial was such a trial that it could be pleaded in bar, the constitu-

tional provision could not be waived by him, and would have shielded him. (*The People* v. *Shepherd, supra,* 418. *The People* v. *Grant, supra.   Cancemi case, supra.*) The public, free from laches on its part, is entitled to at least one full and fair trial to verdict before a lawfully organized tribunal.   Where a juror was irregularly discharged, the prisoner convicted, and judgment set aside, it was held no bar to a second trial. (*State* v. *Williams,* 3 *Stewart,* 454.) Taylor, J., says, (*p.* 476 :) " But can it be the meaning of the constitution, that for one of the thousand inaccuracies which may be committed in the prosecution of one who is charged with a high crime, the judgment is arrested or reversed, this amounts to acquittal?   The forms of proceeding, in such cases, which are required by law, are deemed necessary to secure to the accused a fair and impartial trial; they were never intended to afford him the means of escape without it.   This provision could have had nothing more in view than to prevent a citizen from being tried a second time, after a jury of his country had once acquitted him."   Where, after the commencement of the trial, the judge retires, and another judge takes his place and completes the trial, and the judgment is reversed on that ground, the prisoner cannot be said to have been in jeopardy, and may be tried again. (*State* v. *Abram,* 4 *Ala.* 272.   *Blend* v. *The People,* 41 *N. Y.* 604.)

III. The testimony of Barbara Bowers was competent. It was claimed by the prisoner on the trial that the complainant George Beckerich, or his wife Mary Beckerich, both of whom were witnesses, and who slept in the house the night it was burned, had fired the house in question. It became, therefore, important to determine their conduct at the time of the fire. . 1. Their acts and conduct at the time of the discovery of the fire and its progress, were competent as part of the *res gestæ.*   They had both testified, without objection, as to what had taken place at the time of the discovery of the fire by them. . They both tes-

tified that at that time they saw John Reagle running from the house, and that Beckerich ran and called after him, and called to him from the bedroom. Barbara Bowers testified to no new fact, but only as to the same acts and conduct, and the language used, so far as it tended to characterize the acts of the parties. These were the subject of the investigation, as growing out of the cotemporaneous principal fact, the commission of the crime. (*Mitchum* v. *State*, 11 *Ga.* 615. *Hugh Curry's case*, 4 *City H. R.* 109. *The People* v. *Robinson*, 2 *Park.* 255. *Commonwealth* v. *Pike*, 3 *Cush.* 181. *Greenl. on Ev.* § 108.) 2. The testimony as to the declaration of the witness Beckerich was also competent, under the rule governing the admission of testimony of a witness, who is charged with giving his evidence under the influence of a motive prompting him to give a false statement, when it may be shown that he made similar statements at a time when the imputed motive did not exist. That rule is commented on in *Robb* v. *Hackley* (23 *Wend.* 50.) 3. The evidence was not offered on the ground raised by the objection, that the prisoner was not present. That has reference only to the admissions of parties.

IV. There was not any error in excluding the testimony of the prisoner's wife. There is no statute making her a competent witness. The act of 1867, (*ch.* 887,) entitled "an act to enable husband and wife, or either of them, to be a witness, for or against the other, or on behalf of any party in certain cases," in section 2 provides, that "nothing herein contained shall render any husband or wife competent or compellable to give evidence for or against the other, in any criminal action or proceeding, except to prove the fact of marriage, in case of bigamy." The act of 1869, (*ch.* 678,) allowing persons charged with crime to testify in their own behalf, provides that "the person so charged shall, at his own request, but not otherwise, be deemed a competent witness." Section 398 of the Code

of Procedure, as amended in 1869, confers no new authority or privilege on husband and wife as witnesses in either civil or criminal actions. In that regard, the language does not differ from that of the original section, as adopted in 1849, which provided that " no person offered as a witness shall be excluded by reason of his interest in the event of the action," under which it was never held that they could be witnesses for or against each other in civil proceedings. The wife was not a party to the record in this case.

V. If the conviction is affirmed, the order should specify that the prisoner should appear at the next Erie county oyer and terminer, to perform the condition of his bail bond. (2 *R. S.* 736, § 27.)

*By the Court,* TALCOTT, J. The question principally argued before us was as to the validity of the special plea interposed *pius darrein continuance,* and which was overruled upon the demurrer of the people. It does not appear that any judgment in form was pronounced upon the demurrer, but the return states that the demurrer was sustained by the court; and it appears that the cause then proceeded to trial upon the plea of not guilty. The decision overruling the demurrer was treated as a judgment *respondeas ouster,* and such would have been the record, if one had been made. But the defendant, after the demurrer was overruled, went to trial upon the plea of not guilty, without objection. This was availing himself of the leave to answer over.

There are two reasons why the correctness of the decision upon the demurrer is not legitimately before us. The *certiorari* in this case was issued under the provisions of the Revised Statutes, after trial, and before judgment. The office of the writ, in such cases, is only to bring up the indictment, the proceedings on the trial, and any bill of exceptions that may have been taken; and it presents for

The People *v.* Reagle.

review only the questions arising on the indictment and bill of exceptions. (*See* 2 *R. S.* 736, § 20; 741, §§ 23–25.)

It is true, the return contains a statement that the defendant excepted to the decision sustaining the demurrer. An exception does not lie to such a decision, and is available for no purpose. Exceptions can be taken only on the trial, and to the rulings of the court as to the admission or rejection of evidence, or upon other questions presented on the trial before a jury in criminal cases, and not in any case to the judgment or order of the court upon a demurrer. The remedy for an erroneous decision upon a demurrer is, in civil cases, by appeal; and in criminal cases, by a writ of error.

Secondly, by availing himself of the right to answer over, the defendant waived his former plea, so that the question of its validity could not be reached, even on a writ of error. In such a case, no notice is taken upon the record, of the pleading demurred to, but only the new pleading appears there. (*Graham's Prac.* 612.) The issue of law is withdrawn from the record. As was said by the court in *Jones* v. *Thompson*, (6 *Hill*, 621,) "by amending and pleading the general issue, he admitted the correctness of the judgment upon the demurrer. Had he intended to rely on any error in that judgment, he should not have amended, but left the issue on the record."

But if, as seems to be supposed by the counsel on both sides, the propriety of the decision overruling the demurrer is presented by the *certiorari* and return in this case, we are obliged to say that we think the court of oyer and terminer committed no error in sustaining the demurrer to that plea. The plea relies upon the fact that on the former trial of the prisoner on this indictment, after the jury had been out for several hours, they were called into court by the presiding justice, who, after having ascertained by inquiry of them, that the jury had not agreed, and that there was no probability of their agreement, dis-

charged them, in the absence of the justices of the sessions, and without the knowledge or consent of the prisoner, and they thereupon separated.

It is claimed that the presiding justice had no authority to discharge the jury in the absence of his associates, whose presence is necessary to constitute a court of oyer and terminer; and such seems to be the law. The only thing which the presiding judge is authorized to do, in the absence of his associates, touching the business of the oyer and terminer, seems to be to take recognizances and bail. The case then stands thus: the jury, after the cause was tried and submitted to them, separated without authority, and without having agreed upon any verdict. We think this constitutes no bar to another trial of the indictment. To hold otherwise, would place it in the power of a single juror, by absconding and separating himself from the rest of the jury, to create a perfect protection to a criminal against the legal consequences of the most flagrant and clearly proven crime.

The effect of modern decisions is, that irregularities whereby a lawful verdict is prevented, produce a mistrial, which is no bar to a new trial.

In the leading case of *The People* v. *Goodwin,* (18 *John.* 187,) Spencer, J., in delivering the opinion, says: "In a legal sense, therefore, a defendant is not once put in jeopardy until the verdict of the jury is rendered for or against him." An exception has been made to this rule by later decisions, in the case of the withdrawal of a juror on account of the inability of the people to proceed with the trial after the empanneling of a jury, owing to the absence of witnesses. It is held that the people have no right to withdraw a juror, in a criminal case, under such circumstances; and that the prisoner has a right to have a jury charged with his case.

In *The People* v. *McKay,* (18 *John.* 212,) a new trial was ordered where there had been a trial and conviction, but

The People *v.* Reagle.

the proceedings were defective for want of a seal to the venire; and Spencer, J., delivering the opinion, refers to a case which occurred in Ontario county in 1814, where a woman was tried and convicted of murder, but the jury had separated after agreeing on a verdict, and before coming into court, and a new trial was ordered.

In *Cancemi's case*, (18 *N. Y.* 128,) where a juror was withdrawn by the consent of the people and the prisoner, and the trial proceeded with eleven jurors, resulting in a conviction for murder, a new trial was ordered. In the case of *The People* v. *Shepherd*, (25 *N. Y.* 406,) it is said that " by the common law a new trial could be granted in a case of felony, when there had been a mistrial, relating to the regularity of the organization of the court, or the empanneling of the jury, or, perhaps, conduct of the jury."

The case at bar, however, does not rest upon the mere question of the effect of unauthorized separation of the jury, without having rendered, or agreed upon, a verdict, nothing more having occurred. It is averred in effect in the plea of the defendant, that the jurors in this case attended in the said court of oyer and terminer, on the morning following their discharge, and were thereupon discharged by the court. It is conceded, at this day, that the court may discharge a jury in case of necessity, in a criminal case, without furnishing a bar to a new trial. That the court, in the exercise of its discretion, is to judge of the necessity and propriety of the discharge, provided there be any facts on which such discretion may be exercised. It has repeatedly been held that a jury, having failed to agree, may be thus discharged. It would not, we suppose, be doubted that other causes—such as the sickness of a juror or member of the court, or of the prisoner— would warrant the discharge of a jury before verdict, in a criminal case. So, no doubt, there are many other cases in which such discharge would be proper. We think this

case presents such an instance. The jury had separated without having been legally discharged, after the cause was committed to them, and before having rendered or agreed upon a verdict. Any verdict in the case, to be afterwards rendered by that jury, would doubtless have been invalid, and set aside. Here, then, was a necessity for the exercise of the power of the court, in its discretion, and in furtherance of justice, to discharge the jury. That · power is conceded to have been exercised by a competent court. We think such discharge constituted no bar to a new trial of the prisoner.

Two questions have been presented to us arising on the bill of exceptions. One as to the admission of certain testimony of Barbara Bowers, and the other upon the refusal to permit the wife of the prisoner to be sworn as a witness in his behalf. The prisoner was indicted for arson, in setting fire to a dwelling-house inhabited by one George Beckerich and his family. Beckerich and his wife had both testified that, simultaneously with the discovery of the fire, they, through an open bedroom window, saw the prisoner running away from the house, and that Beckerich, at the time, spoke to the prisoner, to the effect that it was useless for him to run away, and that he was recognized. This testimony was received without objection. The people afterwards called Barbara Bowers as a witness. She was staying at the house in question when the fire occurred, and was in the bedroom spoken of, at the time of the discovery of the prisoner through the window. Amongst other things, she was asked, by the district attorney, "What did you hear Beckerich say, in the bedroom, if anything?" The counsel for the prisoner thereupon objected to any evidence as to what Beckerich said, not in the presence of the prisoner. The objection was overruled, and exception taken. The question was, in the abstract, altogether too broad, and plainly liable in form to the objection interposed by the prisoner's counsel.

The People v. Reagle.

But it was probably intended by the district attorney, and understood by the court, as calling only for what was said by Beckerich to the prisoner. At all events, the only answer elicited by it was a repetition of what Beckerich had said to the prisoner—"I see you John Reagle." This did not purport to be a declaration in the absence of the prisoner, but something said to the prisoner, who, according to the positive testimony of the two previous witnesses, was within hearing at the time. So that, although the question in itself was improper, it is apparent that the prisoner has suffered no injury by it, as the only testimony elicited by it was competent, and the same as had been given without objection by the two previous witnesses. The exception is therefore immaterial.

The rejection of the prisoner's wife as a witness was correct. By the common law, the husband and wife cannot be witnesses for each other. The provisions of the Code of Procedure do not apply to proceedings under the criminal law. The act of 1867, (ch. 867,) " to enable the husband and wife or either of them to be a witness for or against the other," &c., expressly declares that it shall not apply to criminal cases. The act of 1869, (ch. 678,) allowing persons charged with crime to be witnesses in their own behalf, relates only to the party charged with crime.

The proceedings must therefore be remitted to the oyer and terminer of Erie county, with directions to that court to proceed and render judgment in the case; and the defendant ordered to appear in the next court of oyer and terminer holden in and for the county of Erie, to perform the condition of his recognizance.

[FOURTH DEPARTMENT, GENERAL TERM, at Syracuse, November 13, 1871, *Mullin*, P. J., and *Johnson* and *Talcott*, Justices.]